and Sotheby's. Mr. Peltz, whenever you're ready. Good morning. May it please the Court? I am Moish Peltz, Counsel for Appellant Free Holdings. The thrust of Free Holdings' briefing is the District Court made a critical error when it decided the disputed factual question of whether Free Holdings held title to the Quantum GIF file. The District Court's error infected the rest of its ruling, which now requires this Court to reverse on all five counts. Appellee's argument against the finding of error is that Free Holdings did not plead ownership of the Quantum GIF file, but we did. Can I just ask you just sort of an initial question I have. Is it your view that there is, or is it your view, I guess, that there's a distinction between the NFT, the Quantum NFT, and the Quantum GIF? Are those distinct assets? And, well, I guess that's the first part of my question. Yeah, so that's, that's one of the, I think, mixed legal and factual questions before this Court, is what did McCoy intend to do when he created the NFT, and what does our client own? We alleged, right, we own an NFT that Mr. McCoy created in 2014, and that NFT confers title to the Quantum GIF file. So, so your view is they are two distinct assets, or, and you're asserting control ownership over both, or one, or, that's the thing that I'm. Yeah, they're interrelated. We own, the only thing that can be owned is the name, and we own the name, and the name, by, by invocation of its description, provides that ownership of that name, provides ownership of the GIF file. Yeah, that last part is not really the thrust of your complaint, though, as I read it, that the complaint alleges that you own the Namecoin NFT, and that you were first, and that that diminished the value of your NFT. Not that, it's not about Quantum in your complaint, so it seems like a little bit different theory that you're presenting to us. Yeah, and the, if you look at the, the pleadings, it, it, we, we can only own what we own. Tell me where in your pleadings you talk about ownership of Quantum, because that's what I'm, I'm not seeing, is you talk a lot about the Namecoin NFT, and the last step that you just made, you know, a minute ago, about how that then gives you ownership of Quantum, is sort of a different theory than what I took away from reading your pleadings. Right, so we, we, we pleaded that McCoy created the NFT, and that the, that the quote, I assert title to the file at the quantum.gif, and the title transfers to whoever controls this blockchain entry, and we pleaded that we claim the NFT, and then if you look at many of the, the paragraph number of the complaint that you're, yeah, so there, there is a tweet, if you look at paragraph 50, I own the Quantum NFT, so that's one of the, the included by reference, but then also in paragraphs 36 through 43, we're claiming ownership of the original Namecoin NFT, and that by transitive property, through the description of I own the Quantum GIF file, that, that ownership, we can only, we can only own what we own, the ownable part is the name, and that's what we pled. Now, we expected in discovery that we would just further understand what, what exactly, you know, this is harking back quite a while now, but that in this technical question, the Namecoin blockchain, and we expected in discovery we would further understand the nature of how the blockchain Namecoin works, and the nature of what McCoy intended when he made that statement. Okay, I, I, I think what you're affirming, I, I mean, I think what you're saying now is that it is sort of implicit, and that you hope to prove that the Quantum GIF came with the blockchain entry that you claim to own, but, you know, again, I keep coming back to the theory of the complaint seems different. It said the NFT that you owned was devalued and harmed by the auction of the Ethereum NFT. Well, it was, because if, if we own, if, if we own the 2014 NFT, and that NFT gives title to the Quantum GIF file, then any... But again, it's that step right there. Yeah. That is, you're sort of assuming it, and maybe that's assumed in the name, and maybe it's assumed in the tweet that you're talking about, but that's really not the thrust of the complaint as I read it. That's my problem with it. You're arguing that right now. Yeah, I, I, I think, I think the complaint says we, we own this NFT, and then the NFT says ownership of this NFT confers additional property rights, and so by, by invoking ownership of the NFT, we own whatever rights to digital property rights come with the ownership of, but going to the first question, if they're interrelated, there's only one thing we can own. We can't, we can't, the, the, the property right, the digital property right that is conferred upon ownership of an NFT comes through that natural link between the description of the NFT saying, I own some other asset. So, so there... Can I just, I'm sorry, I, so I, I agree sort of with the way that the Judge Park has pointed out how you framed the complaint as what's at issue is the ownership of the NFT, and I guess I don't fully understand why you are, or it appears that you're backing away from that, because as sort of my first question suggested, it seems as if your view is you don't, that the only value at issue here is in quantum, whereas in reading your separate from the, the digital thing that underlies it, and that if those are separate assets, if quantum is an asset, the NFT is an asset. Even if you don't have an ownership interest in, in quantum, there could be an interest in a value in the NFT, is how I read your complaint, but you seem to be backing away from that theory now. I, I don't think I'm backing away from that. I think I'm, I'm trying to, in, in, in the, in, in trying to understand what the District Court did and why it requires reversal, I'm trying to say we, we, we pled that we own the item at issue, and that in, in our opposition, we, we also said, you know, in our opposition to the motion to dismiss, and that's that Joint Appendix 255, 256, the only plausible reading of the phrase title transfers to whoever controls the blockchain entry, is to read that phrase as meaning, in this case, title transfers to whoever controls the 2014 NFT, i.e. free holdings. So we're, we're not backing away from it, but we do think that the Court's error in, in finding that we own some other thing besides what we pled we owned, just mis, mis-colored the rest of the analysis of every of the five point, five claims. Okay. Thank you, Counselor. You've reserved a couple minutes for Kevin McCoy. We want to thank your honors for allowing Counsel for Sotheby's to address the commercial disparagement claim. I'd like to begin really picking up with the questions that were just answered. It's not, the new theory being advanced for the first time in these reply briefs is not a little bit of a different theory. It wasn't in the complaint. He couldn't point you to anything in the complaint because it's not there. Judge Lee, I think you're exactly right, that what's happening here, but what happened on appeal is that free holdings is backing away from what it argued to the District Court. It's really not challenging, not joining issue with the District Court's findings with regard to the NFT. It's transmogrifying to now talk about the artwork. Wait, but is it, I guess I'll ask you the same question. Maybe that's not correct. I mean, are they in fact separate assets, the NFT and quantum? And if is in fact the way that it was pleaded in the complaint, which is focusing on the NFT. I mean, that might be a valid and claim that should proceed. I'm not adopting necessarily the District Court's view that, oh, what's really at issue here is quantum and they can't say they own quantum, so no claim. I'm just, I'm seeking clarity on that because the NFT and quantum are those separate assets. I guess that's question part one and then part two. If so, why does it have to be that the value, doesn't the NFT independent of quantum itself have value? So I wanted to go there next. It is not, that is not a mixed legal and factual issue as was suggested. And the answer is in linked to NFTs can take the form of digital images of physical objects, music, text, and more. That's a JA 48. So right there, they delineate that these are different assets. In their initial complaint, they were actually more explicit. JA 17 paragraph 20, quote, the quantum blockchain record was the first known blockchain record to explicitly link to an NFT. So there they were very specific that the quantum GIF file is different from the 2014 NFT. Right. So what is the, and I'm starting to get press on this, but so what is the thing that has value? Why isn't there a claim that it's the NFT that has value and that that's what they're basing their claim on? If we accept that, yes, these are separate assets. I don't understand in your brief, your argument seems to be that like, well, clearly they don't, they don't, they don't have an interest in quantum. So the claim fails. And to my mind, I don't understand how that follows. How it follows that they don't have a claim. They don't have an interest in quantum. There is nothing of value because the NFT, they are asserting an interest in that. And that the, the, the provenance of that original NFT is what's giving quantum Ethereum its value. It's not, the value is not in the artwork itself. As I see it, it's in the fact of it being this NFT. And so I don't understand your position that if there's no, if they can't assert an interest in the underlying artwork, then the fact that they're serving an interest in the NFT somehow doesn't matter. So both have value. Professor McCoy, who is here today, unlike at early NFT, whoever she, he, or they may be, but Professor McCoy is an artist. His quantum digital artwork, the GIF file is a work of art and that has value. The 2014 NFT that he minted on Namecoin has value in this case because of its novelty, because he was the first one who was, who, who had the foresight to say, we can use blockchain technology to link an NFT to a work of art, which really helps in the art market because proof of provenance is so important to a number of those disputes. So it's real value. The use and the development of the 2014 NFT as he had done, because it was the first of its kind, has value. That NFT on, on Namecoin effectively became locked up because of the way the Namecoin blockchain works, which is a naming blockchain. When Professor McCoy decided he wasn't going to keep refreshing the name that he had arbitrarily assigned, which is the 709A name discussed at length in, in the papers and the decision. So what Namecoin does is it allows you to register arbitrary names and those names attach to NFTs as identifiers. And if they're not periodically subject to updated transactions, then those names can expire and go back to the pool of available names for another user to attach to its own NFT as its identifier. Right. But there is in fact the question of what on the Namecoin blockchain constitutes the NFT. There is dispute as to that, isn't there? I don't think there's any dispute as to what constitutes the NFT. The NFT, the, the 709A record page, which is found. There's not a dispute as to whether or not the NFT is the name or the block or the blockchain. This is something the district court laid out in, in citing to the article. Do you? The district court cited an article that Freeholdings had said that, you know, maybe this is open to reasonable interpretation, which. But don't you, but don't you say that as well in your arguments as to the merits of, unjust enrichment and all of that. One of your claims is that, well, there can't be falsity because there are multiple theories as to what is the NFT. Right. So for that particular claim, so there were two analyses here. There's a 12B1 jurisdictional. The district court made findings of fact there. Those findings of fact are subject to clearly erroneous standard of review. Then there's a 12B6 separate analysis of different elements. But I'm sorry, just to, I'm trying to focus you in here. Either there is a dispute as to the theories for NFT or there isn't. And so you seem to sort of on the first, with regard to the jurisdictional say like, look, there really isn't a dispute here. This is what the NFT is. But then when we talk about the merits and questions of malice and falsity, one of your claims is, well, it can't be false because it's kind of unclear exactly, or there's, there are disputed theories as to what an NFT is. So I understand that there's different parts of the argument, but you have to have one theory as to whether or not the definition of NFT on Namecoin, what it exactly is, is either in dispute or it's not a dispute. Well, again, so the district court did cite that article and it talks about the difference in opinion and then it doesn't do anything with that until later in the decision. Do you think there's a difference of an opinion?  Is your position that there is a difference of an opinion? There's, my position is that Namecoin's FAQ, which is an integral part of the complaint and which the district court properly relied both under 12b1 and 12b6, shows that what they're saying simply is not correct. Namecoin says that names are not tokens, names attached to tokens. Namecoin says that names are arbitrary blobs that go back into a pool of But they're saying theirs was first and by you selling yours and saying that yours was first, that devalues theirs. Why is that not an injury? I don't think they're saying theirs is, so I don't think there's any dispute that Professor McCoy's was first. They're saying that by taking over the naming rights, that they then took control of McCoy's 2014. I think I understand it enough. I guess the question is, when you advertise, when defendants say that the Ethereum NFT was first or it's the original or whatever, that suggests that the other claim from the Namecoin NFT is burnt, right? Right. And so the value of the Ethereum NFT, which Professor McCoy sold, is that it is the same metadata that he conceived. That's the value. Value is in the authenticity of the artist, the only legitimate artist here. And so somebody paid because McCoy said, look, I created this in 2014, and now I've moved that data over to this Ethereum blockchain, which is more stable. So I understand. You have a theory of the case and Freeholding has a theory of the case. We're looking at the complaint and allegations of the complaint. And as I understand it, they're saying that the value of the Namecoin NFT was injured by a false allegation, and we take that for what it is, that Ethereum's is the original, which I guess means that theirs is burnt or no longer a legitimate claim. Yeah. I mean, their theory for the Latimac claim and for trade libel, it goes to that issue and Ms. House will address it. But I just want to wrap up. I'll answer any questions, of course. But if I don't have any more time, I would just like to wrap up with this. Property ownership goes back to property law 101 bundle of sticks. That's what the district court found. The district court said to have control of an NFT, you need a private key. If you're going to say I own and control an NFT, you need to allege facts or offer facts at 12B1 that say I can do something with this. Namecoin says you can't transfer or control an NFT without the private key. They don't allege that. The reason that they minted their own NFT in 2021 was because they couldn't control the 2014 NFT. The reason that they copied and pasted McCoy's metadata from his 2014 NFT into their 2021 NFT was because they didn't have the control of the bundle of sticks of 2014, simply by virtue of having registered the name that had gone back to the available pool. That's what the district court found, that it was entitled to do. That is not clearly erroneous. And certainly they have an alleged plausibility with respect to their claims.  Thank you, your honors. May it please the court, I'm Teresa House of Arnold and Porter K. Scholar, speaking for Sotheby's. I'll be addressing the free speech principles that support dismissal, affirmance of the dismissal of the two injurious falsehood claims in the Lanham Act. I did want to address Judge Park's question just then regarding whether the harm to the value of that alleged harm is unripe. There's been no allegations that there's been any attempt to sell that NFT, so it doesn't meet the requirement that it be concrete and imminent. That dovetails into the first point I wanted to raise, which is regarding the injurious falsehood claims that the plaintiff appellant has failed to allege special damages despite multiple bites at the apple. This is the most straightforward way to find that this claim lacks merit. This is a stringent requirement under Kirby v. Wildstein, a brief case cited in the briefing below. There's a requirement that there's an actual loss and that that loss is the natural and immediate consequence of the challenge statements. The only losses that are alleged on appeal, there were more at the district court that have not been advanced on appeal, was that the appellant could not participate in the auction and lost the customer who purchased the NFT. Not participating in the auction is not a loss and it's not attributable to the statements. There was no right to be in the auction. At special appendix 9, the court quoted the plaintiff stating that the auction concerned an authorized print, good luck to the bidders. It's also not attributable to the statements because the auction of course was run by the defendants and they weren't motivated by their own statements in deciding who to include in that auction or not. Similarly, the allegation that there was a lost customer is also not alleged as an actual loss. The only lost customer that they point to is the purchaser of the NFT at the auction. That is not someone who ceased to be a customer of the plaintiffs and that's not someone who refused to purchase the plaintiffs. Can I just ask you, I mean I think obviously a lot of this is dependent on what you accept as the theories or the arguments, but the notion that if in fact what this buyer was interested in was having the first NFT, if that's what gave this value, if their argument is in part the ideal, well no this really isn't the first or the offshoot, it's not the rightful successor to the first, however you want to frame it, doesn't the idea that there's some loss, potential loss for value in that, I mean you're making a very sort of, and this is not an inappropriate technical argument, but just as a matter of the nature of what they're claiming, if accepting their view, it does seem like there's a loss here because this was marketed as, and you take pains in the brief to say that they didn't actually say it's the first, but a successor to the first and that's what gave it value, isn't it? Well, this is, to be clear, this is an argument on the 12b6 portion of the motion regarding the requirement that special damages be alleged. So this is not merely a footfall, this is a substantive limitation on the claim and with good reason, like libel claims you get recovery for harm to a person or an entity's reputation. For injurious falsehood claims alleged here, trade libel and product disparagement, you're getting, you seek recovery for damage to a product or to a claim of title. That doesn't receive the same amount of protection under the law, it's a much more limited claim. And the special damages requirement is a very substantive part of that limitation and the reason is that you need to show an actual loss. You're not going to presume reputational harm like you might in an inappropriate defamation case. So in your view, that would require free holdings to attempt to sell their name coin entity before they could bring suit? Yes, and the purchaser here was actually a named defendant in this case who was very early dismissed voluntarily by the plaintiff. There was no allegation in the amended complaint that the purchaser was interested in buying this, that there was ever any discussion, that it was ever offered for sale to the purchaser or to anyone else. That's just not sufficient to allege the stringent requirement of showing actual loss that is attributable to the statements. And if free holdings had attempted to sell its name coin quantum and marketed it as the first NFT, I suspect would there have been some legal challenge to that by your client? I can't speculate to that. My client facilitated the auction. Mr. McCoy obviously was the artist in question and the fact is they never tried and they never failed and the stringent requirement requires you to identify actual customers who moved or declined to purchase and that's just the standard under the law. I think we have your argument. Thank you. May it please the court. The discussion here was about the court having made a critical error and then that error weaving its way through the entire decision. And I think the discussion here on almost the standing issue, once you take away the idea that we pled that we own a 2014 NFT and there's that one NFT, there's not two, there's not three NFTs as they allege, then we have suffered harm. And we've suffered harm that this court can address through the various accounts. So we believe there is standing. And a lot of the discussion is about the relative equities of the parties, right? That our client is anonymous, even though it's a registered corporation. Nobody's asking who, you know, Sotheby's shareholders are. It's a corporation. It suffered harm. It owns a bundle of property rights that has been harmed. And we've addressed these claims that provide a basis for a claim and provide remedies for those claims. I think the unjust enrichment is a great example of how these are really factual-based claims of, and I think the Lanham Act also is a good example of factual-based claims that do not rely on special damages, but that show that if we own this NFT and this NFT has been infringed, or our property rights have been infringed, or they have made malicious statements that were false, misleading to customers, then under those two theories, we have a plausible claim, which we've pled in our short statement. Have we pled every single detail of this very technical fact-based claim? We don't have to, right? There's the two cases we cite, which are the Carpenter's Pension Trust Fund, that a fact-specific nature of question raised here, inappropriate to dismiss on 12b6. Given the type of property here, the new emergence of property as something that can be owned digitally, I think this case deserves factual discovery, deserves to be reviewed on its merits, deserves these arguments to be fleshed out and heard by the district court, and so for that reason, I think it would be important just for that reversal to allow that opportunity to happen. Additionally, the discussion here, right, about just different findings of facts that may or may not have happened, again, those are fact-specific, and I think they also lead to this idea that there's a reasonable expectation that discovery would reveal evidence of additional claims that would further support on the claims you've already made. So unless there are any questions. Thank you, counsel. Thank you all. We'll take the case under advice.